LEWIS F. and PRUDENCE FORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ford v. Commissioner
Docket No. 4201-72
United States Tax Court
T.C. Memo 1974-101; 1974 Tax Ct. Memo LEXIS 218; 33 T.C.M. (CCH) 496; T.C.M. (RIA) 74101; April 23, 1974, Filed. *218 A stairway and portion of a seawall at the petitioners' beach-front residence were destroyed to the extent of $300 during a servere winter storm Held: The petitioners are entitled to deduct only the amount of loss suffered which is due to actual physical damage and not that portion of the decline in market value of the property which is attributable to buyer resistance because of the fear of possible recurrence of similar storms. Held further: There is no estoppel against the respondent in the instant case. Lewis F. Ford, pro se. Leo A. Reinikka, Jr., for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency of $636.33 in the petitioners' federal income tax for the calendar year 1967. The issues for decision are: (1) whether petitioners are entitled to a casualty loss deduction under section 165, I.R.C. 1954[1] in an amount greater than the extent of actual physical damage conceded by the respondent, and if so, the amount of the deduction; and (2) whether there is an estoppel against the respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Lewis F. Ford and Prudence Ford are husband and wife *220 who, at the time of the filing of the petition herein, maintained their residence in Lincoln City, Oregon. They filed their joint federal income tax return for the calendar year 1967 with the district director of internal revenue at Portland, Oregon. During 1959 the petitioners purchased a personal residence in Nelscott, now Lincoln City, Oregon, for consideration in the amount of $10,500. This personal residence was located on a low bank, ocean front lot that measured approximately 50 feet in width. There was located on the seaward side of the property a wooden retaining seawall and a wooden stairway leading to the beach. Periodically, severe winter storms on the Oregon coast resulted in damage to the residence and the wooden stairway. In particular, in December 1967, high waves, resulting from strong winds during a severe storm, destroyed the stairway and a portion of the seawall. The total cost of repairing the actual physical damage to the stairway and seawall was approximately $300, and the total value of the property declined to an extent greater than this amount. Any decline in the fair market value of the petitioners' property in excess of the actual physical *221 damage of $300 that resulted following the December 1967 storm was due to general buyer resistance in the community because of possible recurrence of similar storms. Any such decline in value following said storm was temporary in nature and at the time of the trial in this case the property in question had a fair market value of not less than $30,000. On their joint federal income tax return for the calendar year 1967, petitioners claimed a casualty loss deduction in the amount of $2,400, this figure having been reached by subtracting the $100 limitation of section 165(c) (3) from the petitioners' estimate (as determined after consulting their appraisers) of the difference in fair market values of the property before ($25,000) and after ($22,500) the December 1967 storm. The respondent disallowed this deduction in his notice of deficiency since it was his determination that no deductible loss was sustained. The respondent now concedes that petitioners are entitled to a casualty loss deduction in the amount of $200, the actual physical damage of $300 less the $100 limitation. OPINION The first issue requires our determination of whether the petitioners are entitled to a casualty *222 loss deduction under section 165, and if so, the amount of such deduction. Petitioners' beach-front property suffered relatively minor physical damage during a severe winter storm in 1967. The value of the property declined temporarily in an amount greater than the cost of repairing the actual physical damage. This decline was due to buyer resistance to purchasing property in an area subject to recurrent storms. As applicable to the instant case, section 165 provides in subsection (c) (3) for a deduction to individuals for losses of property not connected with a trade or business arising from fire, storm, shipwreck, or other casualty. The petitioners contend that they followed the literal language of the regulations [2] and "Your Federal Income Tax" in determining the amount of their casualty loss deduction by using the difference in the fair market values of the damaged property before and after the storm. Respondent, having conceded that the petitioners are entitled to a deduction in the amount of the actual physical damage less the $100 limitation of section 165(c) (3), contends first that no deduction is allowable for a general decline in market value due to buyer resistance *223 resulting from fear of future storms and secondly that the petitioners have not proved the amount of decline in market value. *224 We think that Joe B. Thornton, 47 T.C. 1 (1966), involving a comparable factual situation and presenting the same question of law is determinative in the instant case. In that case we stated as follows with respect to the issue at hand: In the instant case it is apparent that the great diminution in value of petitioner's residence fixed by his own estimates and by the opinion of his appraiser after the flood in question must have been part of a general market decline for the whole flooded area neighborhood if in fact there was such a great downward plummet of value. The fear of future flooding may have caused an immediate adverse buyer reaction which was area wide in extent. However, under section 1.165-7(a) (2) (i) of the regulations, that portion of the decline in market value of petitioner's residence which was attributable to a general decline in the value of undamaged property cannot be counted in determining the amount of petitioner's casualty loss, and the loss must be limited to the actual loss resulting from the damage to the property by the flood. That this is *225 the proper method to be used in determining the amount of the loss in question seems certain. [47 T.C. at 6] Accord, Kamanski v. Commissioner, 477 F.2d 452 (C.A. 9, 1973), affg. a Memorandum Opinion of the Court. Cf. Squirt Co., 51 T.C. 543 (1969), affd. per curiam 423 F.2d 710 (C.A. 9, 1970). The petitioners cited Conner v. United States, 439 F.2d 974 (C.A. 5, 1971) for the proposition that the amount of the deduction is to be determined on the basis of the before and after values of the property rather than by the actual cost of restoring the property to its condition immediately prior to the loss. We find that case to be distinguishable from the instant case in that there was no finding therein that the decline in value was due to buyer resistance rather than to the actual physical damage, and consequently the court there did not consider the specific question involved herein. There, the taxpayer's home was virtually destroyed by fire. The court held that the deduction there could not be limited to the cost of repairing the damage. That holding is not inconsistent with section 1.165-7(a) (2) (ii) *226 which states only that, under certain circumstances, the cost of repair to damaged property is acceptable as evidence of the loss of value. We think the cost of repair is the proper basis for determining the casualty loss deduction in the instant case in light of the cause of the decline in value and the fact that the report of the petitioners' appraisers, whose expertise was not established, was only general in nature and did not refer specifically to the petitioners' property. Cf. Clapp v. Commissioner, 321 F.2d 12, 13-14 (C.A. 9, 1963), affg. 36 T.C. 905 (1961). Petitioners next claim that the respondent is estopped by his actions from asserting a deficiency in the instant case. Petitioners' basis for this contention apparently is that they attempt to follow the respondent's regulations and his publication "Your Federal Income Tax" in claiming their casualty loss deduction but found those interpretative statements of the law confusing and subject to differing conclusions and accordingly they claimed what they believed to be a legitimate deduction. While we agree that the regulations are generally confusing to the layman, and even at times to *227 attorneys, we do not think these facts present the necessary elements of estoppel, especially in the instant case where we believe the import of section 1.165-7(a) (2) (i) in denying a deduction for "any general market decline affecting undamaged as well as damaged property" is clear. Furthermore, even if "Your Federal Income Tax" were construed to support the petitioners' first contention, such informal publication is not a source of authoritative law in the tax field.
Thomas J. Green, Jr., 59 T.C. 456, 458 (1972). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. Sec. 1.165-7, Income Tax Regs. provides, in pertinent part, as follows: (a) (2) Method of valuation. (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property. * * * (b) Amount deductible. (1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for the purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in sec. 1.1011-1 for determining the loss from the sale or other disposition of the property involved. * * * ↩